**Sandy Alexy AGOSTO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00319–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 5, 2009.

Nicole DeBorde, Houston, TX, for Appellant.

David C. Newell, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Judges TAFT, BLAND, and SHARP.

## OPINION

JANE BLAND, Justice.

Sandy Agosto was charged with aggravated robbery and pleaded not guilty. TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). A jury found him guilty and assessed punishment at twenty-two-and-one-half years' confinement and a $10,000 fine. Agosto appeals, alleging that his trial counsel rendered ineffective assistance because he limited Agosto in his testimony on his own behalf during the punishment phase of the trial, and that the trial court erred by not sua sponte allowing Agosto to testify further in the punishment phase about his version of events and the crime. We affirm.

### Background

On the night of October 30, 2006, the complainant, Dayana Delgado, was asleep in her home, where she lived alone. At around 11:30 P.M., Delgado was awakened by the sound of intruders breaking into her home through a glass door. Delgado immediately called 911 and leaned against the door to her bedroom to try to prevent the intruders from entering the room. The intruders hit the bedroom door with a crowbar, and three men entered her room, grabbed her, hit her, and demanded money. Delgado was not able to tell the 911 operator anything on the phone, but the police were dispatched to the scene be-

cause the operator heard Delgado screaming.

Delgado testified that, based on their accents, she determined that two of the men were Colombian, and one was Dominican.[1] The shorter of the two Colombians hit Delgado, pointed a firearm at her, and threatened to kill her if she called the police. In court, Delgado identified this person as Agosto. While the other men were downstairs Agosto took her upstairs at gunpoint, took off her clothes, and attempted to sexually assault her. When the other two men came upstairs, Agosto stopped, and went downstairs. The other two men took her to another room where they bound her hands and feet and gagged her with a dress. Agosto returned and attempted to assault her a second time, but he stopped because he saw that the police had arrived. The men ran out of the back door of the house and left Delgado tied up inside.

The police on the scene were unable to apprehend any of the intruders, who escaped into a wooded area behind the house. However, the arriving officers called for canine unit backup, and the canine units were able to recover two items from the wooded area behind the house: a dress belonging to Delgado, and a knit cap. The knit cap was tested for DNA and was found to have DNA from two different people on it. Agosto's DNA could not be excluded as a match to one of the DNA profiles.

The intruders left a vehicle in the driveway of Delgado's house. The next morning, a woman called and reported the vehicle stolen. However, the vehicle showed no signs of forced entry or damage to the ignition switch or steering column, which led officers to believe that it was borrowed rather than stolen. Police interviewed the vehicle's owner who provided them with the nickname of a person. Police traced this nickname or assumed name through a database and linked it to Agosto. The police created a photo lineup, and Delgado identified Agosto as the intruder who attempted to sexually assault her.

The jury found Agosto guilty. During the punishment phase, defense counsel called Agosto to the stand to prove eligibility for probation. On direct examination, Agosto testified that he was from Puerto Rico. He also stated that he wanted to give testimony to the jury. He stated that he did not agree with the jury's verdict and wanted to be able to give his testimony about "how things really were." He testified that he was not at Delgado's house and that he had never seen her before. Defense counsel declined to ask Agosto additional questions along these lines.

After the jury left the courtroom to deliberate on punishment, defense counsel offered, on the record, his reasons for not asking more questions of Agosto during the punishment phase. He said that he "believe[d] that he would—and not wanting to go into any attorney/client conversations—basically, he would lay out the facts in which the jury could conclude that they were basically right; and that he was guilty. It would have been more evidence." As for why he did not call Agosto during the guilt/innocence phase, he said, "[I] advised him to exercise his Fifth Amendment right because I believed that his testimony, especially on cross-examination ... basically supplied more information to connect him with the crime." He stated that it was trial strategy not to call Agosto to testify. Agosto contends that he was denied his right to fully testify in the punishment phase and that such a denial constitutes ineffective assistance of coun-

---

1. Delgado is also Colombian, hence her familiarity with the Colombian accent.

sel. He requests that this court reverse and remand for a new trial, or alternatively, for a new punishment hearing.

## Analysis

*The Right to Testify*

A defendant has a right to testify at his own trial, and such a right is fundamental and personal to the defendant. *Johnson v. State,* 169 S.W.3d 223, 232, 235 (Tex.Crim.App.2005) (citing *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987)). In *Johnson,* the Court of Criminal Appeals held, in agreement with the majority of jurisdictions, that a trial court has no duty to inform a defendant represented by counsel of his right to testify. *Id.* at 235. Rather, it is the responsibility of defense counsel to inform a defendant of his right to testify, including the fact that the ultimate decision of whether to testify belongs to him. *Id.* Thus, a claim that a defendant was denied his right to testify is properly addressed under the *Strickland* framework for an ineffective assistance claim. *Id.*

The right to testify is "fundamental" in the sense that the defendant possesses the ultimate authority on whether to invoke the right. *Id.* at 236. The denial of the right to testify is a trial error, rather than a structural error, which is subject to a harm analysis. *Id.* at 237. A court assesses the effect of any alleged error by looking at the defendant's anticipated testimony, the evidence admitted at trial, the jury charge, and other factors. *Id.* at 237–38.

*Ineffective Assistance*

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceed-

ing would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance fell below an objective standard of reasonableness. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Thus, the defendant must prove objectively, by a preponderance of the evidence, that his counsel's representation fell below professional standards. *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App.2002). The second prong requires the defendant to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also Thompson,* 9 S.W.3d at 812. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that the attorney's performance falls within the wide range of reasonable professional assistance or trial strategy. *Thompson,* 9 S.W.3d at 813. Furthermore, a claim of ineffective assistance must be firmly supported in the record. *Id.* (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)).

Here, the trial record fails to demonstrate that counsel's performance fell below an objective standard of reasonableness. *See id.* Counsel stated that, based on the privileged discussions he had with his client, additional testimony from Agosto would reinforce the evidence presented during the guilt/innocence phase of the trial; thus; it was reasonable trial strategy for counsel to advise Agosto to limit the nature of his testimony during the punishment phase. During the punishment phase, the following exchange occurred between the prosecutor and Agosto while he testified:

Prosecutor: Do you agree with the jury's verdict.

Agosto: No. I want to be able to give my testimony, to give my testimony how things really were.

Prosecutor: Okay. Were you there that day?

Agosto: No.

Prosecutor: Okay. So you are saying that the jury got it wrong in this case, correct?

Agosto: They have not heard my testimony.

Prosecutor: Now, Mr. Agosto, you did hear the testimony in this case though, correct?

Agosto: Yes, but I did not have the opportunity to give my version.

Prosecutor: Now, having heard the testimony in this case, you heard Ms. Delgado get on the stand, correct?

Agosto: Yes, I heard her.

. . . .

Prosecutor: And she would have no way to know about you being connected with that car, correct?

Agosto: I don't know her. I have never seen her.

Prosecutor: Okay, that is kind of the next thing. You have never seen her before, correct?

Agosto: Never. I have never had any dialogue with her or seen her in my life, never in my life.

Prosecutor: And you never threatened her at any point in time, correct?

Agosto: I don't know, you know, even where she comes from. I just don't know her.

Prosecutor: I mean, she would have no reason really at all to point you out in this lineup, correct? It is not like you all have a grudge against each other, correct?

Agosto: Yes; but if you give me the opportunity to talk to the jury and let them hear my testimony, then you will find out that I didn't have anything to do with this, that I don't even know her.

After this exchange, defense counsel chose not to inquire further about the defendant's version of events. Based on the record before us, we cannot conclude that defense counsel's efforts fell below a reasonable level of professional assistance. Defense counsel stated on the record that he was concerned that Agosto's testimony would be further evidence against him, given that Agosto already had stated that he had never been near the scene of the crime or seen Delgado before, which was contradicted by evidence of his DNA at the crime scene and Delgado's identification of Agosto. Agosto's assertions on appeal, in the absence of anything more in the trial record, are insufficient to show that he asserted his right to testify further and his attorney failed to protect it. *Salinas v. State,* 163 S.W.3d 734, 740–41 (Tex. Crim.App.2005) (holding that where counsel advised appellant against testifying because of his prior convictions, no evidence in the record showed that counsel failed to protect appellant's right to testify).

*Independent Trial Court Duty*

■ Agosto further contends that the trial judge had a duty to make an inquiry and allow him to testify further when defense counsel did not. Here, the face of the record belies such a contention. The trial judge had no obligation to inquire further in light of defense counsel's statements, which demonstrate counsel's trial strategy in allowing the defendant to testify, but not going further into his version of events. *See Johnson,* 169 S.W.3d at 235. Agosto's complaint on appeal does not "reveal an error attributable to the court and not simply to defense counsel." *Id.* at 232.

Absent such error, the proper analysis is one under *Strickland.* *Id.* Agosto's contention thus is without merit.

### Conclusion

We hold that Agosto's trial counsel did not render ineffective assistance by failing to allow Agosto further testimony in the punishment phase. We therefore affirm the judgment of the trial court.