

# NUMBER 13-16-00260-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

NATHAN TIMOTHY FARIAS,                                     Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

On appeal from the 430th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

Appellant Nathan Timothy Farias was convicted of one count of aggravated sexual assault (count one), *see* TEX. PEN. CODE ANN. § 22.021 (West, Westlaw through 2017 1st C.S.), and one count of continuous abuse of a child (count two), *see* TEX. PEN. CODE ANN. § 21.02 (West, Westlaw through 2017 1st C.S.). In three issues, Farias argues that (1)

the evidence is insufficient to sustain his convictions; (2) he received ineffective assistance of counsel; and (3) the cumulative errors below denied him of a fair trial. We affirm.

## I. BACKGROUND

Farias and Candra Gonzalez are the parents of J.G.[1] From about 2012, J.G., who was approximately four-years old at the time, lived with Farias and Farias's mother. Gonzalez attempted to visit J.G. to no avail. In August of 2013, a temporary restraining order was rendered in the suit affecting the parent-child relationship filed by Gonzalez. Farias did not appear at the hearing on the matter. Upon a finding that Farias was deliberately avoiding service of process, a capias for his arrest was issued. The trial court also ordered J.G. to be placed in Gonzalez's care. Farias was taken into custody on September 18, 2014; the trial court informed Farias that he would go to jail without bond unless he brought J.G. to court.

Within the first day of regaining possession of J.G., who was now about six years old, Gonzalez asked J.G. if Farias had "done anything to her." J.G. responded, "Well, I don't want to get in trouble." Gonzalez explains the rest of their conversation:

> [t]hat's when she told me that [Farias and J.G.] were watching a scary movie and he had placed his finger in her butt . . . [s]he said that Nathan had put his private next to—or in her mouth and that white stuff came out and she spit it on the floor because it was nasty.

The next day Gonzalez reported the matter to the police, who notified the Child Protective Services (CPS). CPS worker Elizabeth Chavez testified that they discovered during the

---

[1] We refer to the child by her initials in order to protect her privacy. *See generally* TEX. R. APP. P. 9.8(b).

2

investigation that J.G., although six years old when the investigation had begun, had never been enrolled in school while she lived with Farias. It is a "red flag" to CPS workers when a child is "being kept isolated, kept from the public eye." Chavez testified that aside from the obvious importance of early education for children, teachers often help CPS workers identify markers of abuse; thus, according to Chavez, it is a red flag if a child is being kept away from school and teachers.

At trial, J.G., who was now eight years old, testified that she never saw her mother during the entire time she lived with Farias. She further testified that she did not like living with Farias because "he treat me bad." J.G. then testified as follows:

Prosecutor: Now, [J.G.], has anybody ever touched you on your private parts?

J.G.: Yes.

Prosecutor: Okay. And who is that?

J.G.: Nathan.

Prosecutor: Okay. Can you tell me what private parts?

J.G.: Yes.

Prosecutor: Okay. Which ones?

J.G.: My coconut,[2] my butt and -- and my mouth.

Prosecutor: Do you remember the place that that happened?

J.G.: No.

Prosecutor: Okay. Do you remember a room?

J.G.: Yes.

---

[2] J.G. used the term coconut during trial to refer to her female sexual organ.

3

Prosecutor: Okay.   What room?

J.G.: Cece's room.[3]

Prosecutor: Cece's room.   Now, when you say he touched your coconut, what did he touch your coconut with?

J.G.: His hands.

Prosecutor: Now, I am going to ask you really specific, did it touch on the outside or in the inside?

J.G.: The inside.

Prosecutor: Do you remember if you were wearing clothes?

J.G.: Yes.

Prosecutor: Okay. Were you wearing clothes?

J.G.: No.

Prosecutor: How did it feel?

J.G.: Bad.

Prosecutor: And you said that he touched you on your butt?

J.G.: Yes.

Prosecutor: Okay.   Was it on the outside or on the inside?

J.G.: The inside.

Prosecutor: And do you remember what he touched your butt with?

J.G.: Yes.

Prosecutor: With what?

J.G.: With his weeny.

---

[3] "Cece" is what J.G. calls Cecili Alcoser, the woman Farias was living with at the time.

4

Prosecutor: Do you remember if it happened more than once?

J.G.: It happened -- it happened more than once.

Prosecutor: How did that feel?

J.G.: Bad.

Prosecutor: Now, do you remember about him touching you somewhere on your mouth?

J.G.: No.

Prosecutor: Okay. Did anything ever happen to your mouth that you didn't like?

J.G.: Yes.

Prosecutor: Okay. What happened?

J.G.: That white stuff with grey came out.

Prosecutor: And where did it come out from?

J.G.: From his weeny.

Prosecutor: Do you remember if that happened once or more than once?

J.G.: More than once.

Prosecutor: And what would you do with the white stuff?

J.G.: I would just leave it alone.

Prosecutor: You would leave it alone?

J.G.: Yes.

Prosecutor: Now, did you ever put your hands on Nathan?

J.G.: Yes.

Prosecutor: Okay. Now, I am going to show you, do you remember what places?

5

J.G.: Yes.

Prosecutor: Okay. What places?

J.G.: On his weeny.

Prosecutor: Okay. And how would you do it?

J.G.: Up and down.

Prosecutor: Can you she (*sic*) me?

J.G.: (Demonstrating).

Prosecutor: And did that happen once or more than once?

J.G.: More than once.

Prosecutor: What would happen when you would make that motion?

J.G.: White stuff and grey will come out.

J.G. testified that she never told anyone about this, except for one friend, "[b]ecause he told me to keep it a secret." She admitted to telling one friend about this, but she told her friend to never tell anyone. The medical records contained the following notes:

> Patient states: "Nathan took me home with him. He spanked me really hard on my hands and my butt. He didn't feed me very well. I have to get out and sneak the food. He spanked me with a belt, the silver part where they put the holes. I didn't get to finish my beans and my bread. I stole the bread. Nathan, he touched me in the butt." Patient indicates anus by pointing. "He put me upside down and the cream came out again and again. It came out of his part. He also made me slap his area with my face. It was gross. He put his area in my butt and inside my mouth and the cream came out. He touched me here." Patient indicates female sexual organ by pointing with his [sic.] hand. "He made me do this." Patient demonstrated by putting leg straight up in the air and opened and "he put his area to my legs and the cream came out and goes to my

6

stomach. "Ms. Ruby[4] called me puta.[5] She calls me puta every single day."

The Child Advocacy Center interviewer relayed the following at trial

Well, [J.G.] told me that Nathan the bad guy would touch her and kiss her when she didn't want to be touched. And he would touch her in the front, in her front part, and in her butt, and she specifically said that. And then he would put his private part in her mouth and keep it in her mouth and spit it out and spit the cream out.

J.G. testified that such events occurred "lots of times."

Farias entered a plea of not guilty on both counts. The jury found Farias guilty on both counts and assessed punishment at fifty years' confinement in the Texas Department of Criminal Justice, Institutional Division (TDCJID) on count one and fifty-five years' confinement in the TDCJID on count two. This appeal ensued.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Farias contends that the *corpus delicti* doctrine mandates a finding of insufficient evidentiary support; in his second issue, Farias complains generally that the evidence is legally and factually insufficient to support his convictions. We will address these together as one issue.

### A. Standard of Review and Applicable Law

In order to determine if the evidence is legally sufficient in a criminal case, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of

---

[4] "Ms. Ruby" is the mother of Cecili Alcoser, the woman Farias was living with at the time. Farias, Alcoser, and J.G. lived in the home of "Ms. Ruby."

[5] "Puta" is a Spanish slang word meaning "prostitute" or "woman who has many casual sexual encounters or relationships." http://www.en.oxforddictionaries.com/definition/us/puta

7

the crime beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 905 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *see also Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). We give great deference to the trier of fact and assume the factfinder resolved all conflicts in the evidence in favor of the verdict. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We will uphold the verdict unless the factfinder "must have had reasonable doubt as to any essential element." *Id.* at 517. The legal-sufficiency standard upheld in *Jackson v. Virginia* is the only standard that should be applied in criminal appeals; thus, we do not perform factual sufficiency reviews in criminal cases. *See Brooks*, 323 S.W.3d at 894.

"Courts give wide latitude to testimony given by child victims of sexual abuse." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). The child complainant's description of the abuse need not be "precise." *Id.* This rule "reflect[s] the important public policy that we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). We have previously held that "[t]he testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault." *See Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). Furthermore, there is no requirement that the victim's testimony be corroborated by medical or physical evidence. *See id.*

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

8

1997).   Such a charge in this case would state that a person commits the offense of continuous sexual abuse if the person committed two or more acts of sexual abuse against the victim within a thirty-day period and the victim was under the age of fourteen. *See* TEX. PENAL CODE ANN. § 21.02(b).   Such a charge in this case would also state that a person commits the offense of aggravated sexual assault if the person caused his sexual organ to penetrate the mouth of the victim and the victim was then under the age of six.   *See id.* § 21.021(a)(1)(ii), (f)(1).

## B. Discussion

Farias's first argument—that the *corpus delicti* doctrine mandates a finding of evidentiary insufficiency in this case—is misplaced.   *Corpus delicti* simply requires that "an out-of-court confession be corroborated by some evidence that the offense actually was committed."   *Salazar v. State*, 86 S.W.3d 640, 641 (Tex. Crim. App. 2002).   Farias did not make any out-of-court confessions or non-custodial inculpatory statements that were admitted or at issue in the present case.   *Corpus delicti* is simply inapplicable.

Even though Farias invites us to find the evidence to be factually insufficient, that is not the test.   As established in *Brooks* eight years ago, there is "only one standard to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt:   legal sufficiency."   *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Brooks,* 323 S.W.3d at 894) (internal quotations omitted).   Farias does not claim a lack of evidence on any particular element; rather, he broadly claims that J.G.'s testimony was so "fantastical, whimsical, unreliable, and contradictory" as to be insufficient to support his convictions.   For example, J.G. claimed in one of her outcries

9

that the sexual abuse and assaults happened at the "island." Farias contends that this renders her testimony "too fantastical" for any rational jury to believe anything she said because Farias does not live on an actual island and he allegedly never took her to an island. However, when asked why she called the house she lived in with Farias "the island," J.G. responded, "I just only had myself in the room. I pretend I had toys." We do not find her testimony to be so contradictory, fantastical, or unreliable that it would cause a rational jury to have reasonable doubts about her testimony or the elements of the offenses. *See Laster*, 275 S.W.3d at 512.

Concerning the specific elements, there was no question that J.G. was under the age of 6 at the time of the alleged acts. J.G. gave sufficiently accurate descriptions of the sexual acts that allegedly occurred on numerous occasions. Even with some of the supposed contradictions, we assume a rational jury simply resolved any supposed conflicts in favor of the verdict. *See id.* And we established above that J.G.'s testimony alone is enough to support the convictions, even without any medical testimony. *See Soto*, 267 S.W.3d at 332. Therefore, viewing all of the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that Farias committed the offenses of continuous sexual abuse and aggravated sexual assault. *See Temple*, 390 S.W.3d at 360; *Brooks,* 323 S.W.3d at 894. We overrule appellants' first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Farias argues that his trial counsel rendered ineffective assistance because he did not make certain objections to evidence and testimony

10

admitted at trial.

**A. Standard of Review and Applicable Law**

To establish ineffective assistance of counsel, Farias must show by a preponderance of the evidence that (1) his counsel's representation fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668 (1984). Trial counsel should normally be afforded an opportunity to explain his or her actions before being proclaimed as deficient, especially if counsel's reasons for failing to take an action do not appear in the record. *See Menefield v. State,* 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012)*.* If trial counsel has not been given an opportunity to explain its actions, "then the appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Id.* Thus, direct appeal is usually an inadequate tool for claims of ineffective assistance because the record has not been developed sufficiently to make such findings. *Id.*

A defendant suffers prejudice when there is a "reasonable probability" that the result of the proceeding would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To prevail on a claim of ineffective assistance connected with the absence of an objection, it must be shown, as a threshold matter, that the subject evidence was inadmissible. *See Ex parte Jimenez*, 364 S.W.3d 866 (Tex. Crim. App. 2012, cert. denied).

11

## B. Discussion

As part of his ineffective assistance of counsel claim, Farias argues that his attorneys failed to raise a number of objections. For example, according to Farias, his attorney should have objected to testimony concerning the circumstances of J.G.'s return to Gonzalez. Also, Farias contends that it was highly prejudicial for the jury to hear about Farias's incarceration and the capias issued against him. Farias also complains that his counsel should have objected to numerous hearsay statements relating to Farias's parenting.

However, Farias never filed a motion for new trial and his trial counsel was never afforded an opportunity to explain his actions; courts are hesitant to declare a counsel's performance as deficient until he has been afforded an opportunity to explain himself. *See Menefield,* 363 S.W.3d at 592. In its current state, the record does not support the allegations of ineffective assistance of counsel. *See Carballo v. State*, 303 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Allegations of ineffective assistance of counsel must be firmly founded in the record.").[6] For example, Farias claims that his trial counsel should have objected when the officer stated that he did not endeavor to interview Farias because he was incarcerated at the time. However, his trial counsel raised an objection, and it was sustained by the trial court. Farias complains that it was prejudicial for Gonzalez to testify regarding the capias issued for Farias's arrest and that

---

[6] We note that challenges requiring a record to substantiate a claim, such as ineffective assistance of counsel, may be raised in an application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2017 1st C.S.); *Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001).

she regained custody while Farias was incarcerated. However, those circumstances were relevant to the nature of the case, how the abuse was discovered, and when J.G.'s outcry statements were made. Thus, Farias has not shown that evidence relating to his incarceration was inadmissible. *See Ex parte Jimenez*, 364 S.W.3d at 866.

Likewise, Farias complains that his attorney should have objected to testimony from a nurse that claimed that J.G. told her that Farias spanked J.G. "really hard" and that he did not feed J.G. very well. However, these statements were related to medical diagnosis and treatment. *See* TEX. R. EVID. 803(4). Again, Farias has not shown that these statements were inadmissible. *See Ex parte Jimenez*, 364 S.W.3d at 866. Even assuming that any of the other claims about his trial counsel are true, Farias has wholly failed to establish that the questioned acts were "so outrageous that no competent attorney would have engaged in [them]." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Furthermore, Farias did not establish prejudice by showing a "reasonable probability" that the result of the proceeding would have been different but for his trial counsel's alleged shortcomings. *See Thompson*, 9 S.W.3d at 812. Farias offers no explanation as to how the result might have been different had his trial counsel raised any of these objections. As noted above, testimony regarding Farias's incarceration were highly relevant to the case; thus, Farias has not shown that the trial court would have sustained any objection to that testimony. Regarding, the officer's testimony, the trial court sustained the objection that his trial counsel raised. And even if the trial court granted any supposed hearsay objections, Farias has not shown a reasonable probability

13

that it would have changed the results of the proceedings, given the weight and nature of the testimony and evidence adduced at trial against Farias. *See id.* We overrule Farias's second issue.

## IV. CUMULATIVE ERROR

Lastly, Farias argues that the cumulative errors committed by the trial court and his trial counsel affected his right to a fair and impartial trial.

It is true that a number of errors, although harmless when considered independently, may be harmful in their cumulative effect. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). However, there is no authority that "non-errors may in their cumulative effect cause error." *Id.* We have already held that the neither the trial court or Farias's counsel committed error. Therefore, the cumulative effect of their non-errors cannot be harmful. *See id.* We overrule Farias's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of June, 2018.

14