**Carl Darnell GAVIN, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00881–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 20, 2010.

Sharon E. Slopis, Houston, TX, for Appellant.

Erin Craig, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

■ Carl Darnell Gavin pleaded guilty to the offense of indecency with a child, and the trial court ordered deferred adjudication. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon Supp.2009). After Gavin violated the terms of his community supervision, the State moved to adjudicate guilt, and the trial court sentenced him to prison for 20 years. On appeal, Gavin argues that he received ineffective assistance of counsel during the proceedings to adjudicate his guilt and assess his punishment, and that the trial court's imposition of the maximum sentence allowed by statute constituted cruel and unusual punishment.* We affirm.

## Background

When she was ten years old, Gavin's stepdaughter, D.L., told her father that Gavin had been sexually abusing her since she was seven years old. Gavin was initially charged with aggravated sexual assault of a child, but the State later reduced the charge to indecency with a child by contact. In May 2007, Gavin pleaded guilty, and the 177th Criminal District Court (hereinafter, the trial court) deferred adjudication of guilt for 8 years, placing Gavin on community supervision.

At the time the trial court deferred adjudication of Gavin's guilt, it admonished him, among other matters, that he was subject to being punished by a fine not to exceed $10,000 and confinement of not more than 20 years or less than 2 years. Although the trial court previously had allowed Gavin to have supervised visits with his three biological sons during the pendency of his criminal case, the conditions of Gavin's community supervision restricted him from any contact with any minor under the age of 17, including his children, except with the trial court's permission. In addition to the trial court's admonishments, this requirement was explained to Gavin by his probation officer, who specifically explained that the requirement applied to Gavin's own children, and

---

* Gavin filed a document with the Court in which he discusses his case. It does not purport to be a brief, and we do not construe it as such. A criminal defendant is not entitled to hybrid representation. *See Robinson v. State,* 240 S.W.3d 919, 922 (Tex.Crim.App. 2007).

that even if some other court, such as a civil or family court, gave him permission to contact his children, he was still required to obtain the permission of the trial court, which maintained jurisdiction over his community supervision. In this appeal Gavin is not challenging these conditions of his community supervision.

In November 2007, after Gavin had unauthorized contact with his biological sons by telephone, the trial court sentenced him to 30 days in jail as a form of therapy to impress upon him the importance of complying with the terms and conditions of his community supervision.

In a separate proceeding, in July 2008 the 313th Juvenile District Court (hereinafter, the juvenile court) authorized Gavin to have a supervised visitation with his sons. The record on appeal contains few details about the nature of this proceeding in the juvenile court, but it is apparent that the proceeding was related to Gavin's family's involvement with Child Protective Services (CPS), a division of the Texas Department of Family and Protective Services. Gavin and his wife visited with their children for approximately one hour at a CPS office.

The State subsequently moved in the trial court to adjudicate guilt on the charge of indecency with a child, alleging that Gavin again violated the terms and conditions of his community supervision by having contact with his biological sons from or about June 1, 2008 to July 8, 2008, and from or about July 11, 2008 to July 15, 2008. S. Bolton, the CPS investigative worker who supervised the visitation, testified at the trial court's hearing to determine whether to proceed with an adjudication of Gavin's guilt. Bolton said CPS received a report that the children were seeing Gavin, including staying with him on the weekends. Bolton was asked to remove the children, who were living with

their mother at their grandmother's house. In addition, Bolton testified that she supervised Gavin's visit with his children in July 2008, and she testified that he hugged them, played with them, prayed with them, and behaved appropriately. However, Bolton also said that Gavin told the juvenile court that he did not know if he was on probation and that he did not register as a sex offender. Registration as a sex offender was one of the conditions of Gavin's community supervision, and Bolton testified that she knew he was a registered sex offender because she had seen his registration card.

Gavin presented two witnesses in his defense: his mother-in-law Gwendolynn Giles and his wife Erica Gavin. Giles testified that her daughter and three grandsons live with her and her husband. Giles testified that CPS said that she told them her grandsons had contact with Gavin, but despite CPS's assertion, Giles denied having personal knowledge of whether Gavin had contact with his sons. However, Giles also testified that she believed her grandsons when they said they had contact with Gavin.

Erica denied that the children had been staying with Gavin. Erica denied that Gavin saw his children on the dates alleged in the motion to adjudicate. She also denied that Gavin misrepresented the status of his criminal case to the juvenile court. Erica testified that the children miss their father and that she and they need his emotional, financial, and physical support. Erica testified that Gavin is a good father and that she thought the trial court should continue Gavin's deferred adjudication.

However, on cross-examination, Erica agreed that Gavin had been advised by his probation officer that he was not to have contact with his children without the trial court's permission, regardless of any ruling from a juvenile court. Erica conceded

that Gavin had spent 30 days in jail for previously contacting his sons by telephone and that Gavin had contact with his children during a CPS visit in the three months prior to the hearing on the motion to adjudicate. Although Erica conceded that Gavin pleaded guilty to charges of sexually abusing her daughter, Erica said she did not believe her daughter "with certain things." She said, "I don't believe that." Rather, Erica insisted that Gavin is a good father and agreed that she would consider having more children with him. In closing, Gavin's trial counsel asked the court to take judicial notice of its files, particularly regarding the prior order permitting supervised visitation.

The trial court found the allegation in the motion to adjudicate true, stating:

I do want the record to reflect the court has taken judicial notice of not only the probation file in this case but also the clerk's file. And in the clerk's file I have found an order entered on March 23rd, 2007, by me allowing Mr. Gavin to have supervised contact with his biological sons, said order to terminate at the conclusion of the matter of the State of Texas versus Carl Gavin. This matter was terminated when Mr. Gavin pled guilty to indecency with a child on May 29th, 2007. Mr. Gavin was told by this court and by Ms. Davila [Gavin's probation officer] not to have any contact with any children.

Review of the probation file shows that not only did Miss Bolton hear him say that he was not on probation and was not a registered sex offender to Judge Molder [of the juvenile court], but Mr. Burkholder, assistant county attorney, also heard him say that.

The State presented no evidence during the proceeding for assessment of Gavin's punishment. Erica testified again for Gavin, addressing the issues of how difficult it is to raise her children without him and how much financial help he provided for her and the children. She denied that D.L. ever told her that Gavin had been molesting her, asserted that Gavin is a good father, and agreed that "[t]he second he's out of prison, he's coming back home to take care of [his] kids." In response to the trial court's question, Erica testified that D.L. no longer lives with her.

In addition, Gavin's pastor Thurman West testified that Gavin attends church regularly and seeks spiritual counseling. Pastor West testified about the evident stress in Gavin's and Erica's lives, yet he conceded that he does not know what Gavin does "in the darkness of his own home when nobody is looking" or whether Gavin has molested children.

Despite the trial court's finding that the allegations against Gavin were true, defense counsel argued in closing that Gavin should remain on community supervision and that the court should create some conditions that would allow Gavin to see his children. Counsel for the State argued for imprisonment of at least 10 years, saying, "I'll leave it up to the court as to what prison sentence to assess, but clearly 20 years is not enough for the allegations that he's pled true to, sexually assaulting a child from the age of seven to ten years old on a repeated basis."

**Cruel and Unusual Punishment**

■ In his second issue, Gavin contends that the trial court's imposition of the maximum sentence of confinement for 20 years violates the Eighth Amendment prohibition against cruel and unusual punishment. We hold that Gavin waived this issue on appeal because he failed to assert this challenge to the trial court. *See* TEX. R.APP. P. 33.1; *Curry v. State*, 910 S.W.2d 490, 497 (Tex.Crim.App.1995) (holding that failure to make specific objection at trial

waives Eighth Amendment claim of cruel and unusual punishment); *accord Solis v. State,* 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Trevino v. State,* 174 S.W.3d 925, 927–28 (Tex. App.-Corpus Christi 2005, pet. ref'd) ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [the appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection." (footnote omitted)). We overrule Gavin's second issue.

### Ineffective Assistance of Counsel

In his first issue, Gavin contends his trial counsel was ineffective in the following ways: (1) calling witnesses whose testimony did more harm than good; (2) not adequately preparing the witnesses to testify; (3) not adequately investigating Gavin's case; (4) delivering a legally flawed closing argument; and (5) failing to object to Gavin's sentence as cruel and unusual punishment.

*Standard of Review*

The standard of review for claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984), and *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). To prevail, Gavin must first show that his counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Bone,* 77 S.W.3d at 833. "Specifically, appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." *Bone,* 77 S.W.3d at 833. "Second, appellant must show that this deficient performance prejudiced his defense," meaning that Gavin "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App. 2002)). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Bone,* 77 S.W.3d at 833. Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999). When determining the validity of an ineffective-assistance-of-counsel claim, judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim.App.1984). The record on direct appeal will rarely contain sufficient information to evaluate an ineffective-assistance-of-counsel claim. *See Bone,* 77 S.W.3d at 833. Based on such a record, a finding that counsel was ineffective would normally require impermissible speculation by the appellate court. *Stults v. State,* 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). When the record is silent as to trial counsel's strategy, we will not conclude that defense counsel's assistance was ineffective unless the challenged conduct was " 'so outrageous that no competent attorney would have engaged in it.' "

*Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005) (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)).

*Appeal Permitted from Decision to Adjudicate Guilt*

In Gavin's first issue, he complains that his trial counsel was ineffective during the proceedings for both the adjudication of his guilt and the determination of his punishment. Gavin's brief states that "an appellant cannot appeal the trial court's decision to adjudicate guilt." Article 42.12, § 5(b), of the Texas Code of Criminal Procedure formerly prohibited an appeal from the trial court's decision to adjudicate guilt. *See Hargesheimer v. State,* 182 S.W.3d 906, 913 (Tex.Crim.App.2006). However, a 2007 amendment removed the language stating "no appeal may be taken from this determination," i.e., the determination to adjudicate guilt. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1308, § 5, 2007 TEX. GEN. LAWS 4395, 4397. The statute now provides that the trial court's determination to adjudicate guilt on the original charge "is reviewable in the same manner as a revocation hearing conducted under Section 21 of this article in a case in which an adjudication of guilt has not been deferred." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon.Supp.2009). Thus, in proceedings governed by the amended provision of the Code, a defendant is no longer barred from challenging a trial court's decision to adjudicate guilt. *See Durgan v. State,* 240 S.W.3d 875, 878 n. 1 (Tex.Crim.App.2007).

In his brief, Gavin expressly complains that he received ineffective assistance of counsel during the proceeding to adjudicate his guilt. His complaints about that stage of the proceeding are that his counsel introduced harmful evidence by calling his wife and his mother-in-law to testify, and that his counsel requested in closing argument that the trial court "take judicial notice of its own file," which revealed that Gavin knew he was not allowed to be in contact with his children and misled the civil court concerning his status as a probationer and registered sex offender. Thus, we will review Gavin's challenges regarding both the adjudication-of-guilt and punishment phases of the proceedings. *See* TEX.R.APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

*Adjudication Phase*

Gavin contends that his counsel was ineffective during the adjudication phase by eliciting harmful testimony from Gwendolynn Giles and Erica Gavin, by asking the trial court to take judicial notice of its files, and by not sufficiently investigating his case.

First Gavin contends that Giles's testimony was harmful to him and that his counsel should not have called her to testify. Giles testified that she had no personal knowledge of whether Gavin had contact with his sons but that she believed her grandsons when they said they had contact with Gavin. Because Giles also testified that the children lived with her, her testimony that she had no personal knowledge of Gavin's contact with the children could have been helpful to Gavin.

Gavin relies on *Fernandez v. State,* 830 S.W.2d 693, 697 (Tex.App.-Houston [1st Dist.] 1992, no pet.), for the proposition that his trial counsel was ineffective for calling Giles and failing to object to hearsay. In *Fernandez,* the appellant's wife gave incriminating testimony that was not corroborated by any other witness. *Id.* Here, CPS investigator Bolton testified that she observed a visitation in which Gavin had contact with his sons. Thus Gavin was not harmed by Giles's testimony about believing her grandsons. *See*

*Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim.App.1999) (holding that error in admitting hearsay was harmless because other properly admitted evidence proved same fact). Moreover, as to the decision to call Giles as a witness, Gavin has not overcome the presumption of reasonable trial strategy. *See Goodspeed,* 187 S.W.3d at 392.

 Second, Gavin argues that his wife Erica's testimony was only harmful to him and his counsel should not have called her to testify. Erica testified about Gavin's 30–day "jail therapy" for previously contacting his children, the probation officer's explanation of his community-supervision conditions, and Gavin's visitation with his children. However, she also testified that Gavin is a good father, describing the financial, material, and emotional support Gavin has provided to them. As with Giles's testimony, Erica's incriminating testimony was similar to that of the probation officer, P. Davila. Gavin argues that Erica's testimony about her daughter D.L.'s outcry introduced the "egregious facts of the underlying offense," which would not have otherwise been introduced. Gavin's logic is flawed, however, because this was not a jury trial: it was a hearing before the same trial court that previously deferred adjudication of Gavin's guilt and placed him on community supervision. The "egregious facts" of the underlying offense to which Gavin pleaded guilty were already known to the trial court. Under these circumstances, we cannot conclude that the introduction of Erica's testimony, in which she repeatedly emphasized that Gavin was a good father, was "so outrageous that no competent attorney would have engaged in it." *Goodspeed,* 187 S.W.3d at 392.

 Third, Gavin challenges as ineffective his counsel's request that the trial court to take judicial notice of its own file.

"In a criminal case, a trial court may notice judicially all of its own records, including all judgments and convictions entered by it." *Turner v. State,* 733 S.W.2d 218, 221–22 (Tex.Crim.App.1987). Moreover, all of the information that the trial court noted from its files was duplicative of testimony offered by Davila and Bolton. Thus, Gavin cannot show that but for his counsel's request for the trial court to take notice of its records, the result of the proceeding would have been different. *See Bone,* 77 S.W.3d at 833.

 Fourth, Gavin argues that his trial counsel did not sufficiently investigate the facts of this case. Specifically, Gavin contends that if his trial counsel had more fully investigated the case, his attorney could have advised him not to have contact with his children, despite the juvenile court's order permitting visitation. Here, Gavin attacks the competency of the trial counsel who represented him at the original plea proceeding. Moreover, rather than complaining about counsel's performance in the proceeding to adjudicate his guilt, Gavin complains about allegedly not receiving legal advice, which he claims "perhaps" may have saved him from violating the conditions of his community supervision. This complaint about the quality of legal advice, allegedly resulting in a violation of the terms of his community supervision and resulting adjudication of guilt and imposition of punishment, does not implicate the Sixth Amendment right to the assistance of counsel as applied by *Strickland* and its progeny to review the performance of defense counsel in a criminal proceeding. To the extent that Gavin's challenge may be construed to encompass the effectiveness of his counsel from the original plea proceeding, he is unable to raise that issue now. "[A] defendant placed on deferred adjudication community supervision may raise issues relating to

the original plea proceeding, such as evidentiary sufficiency, only in appeals taken when deferred adjudication community supervision is first imposed." *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex.Crim. App.1999); *Guillory v. State*, 99 S.W.3d 735, 738 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). *Manuel* has been construed as obliging a defendant to appeal any issue relating to the original plea hearing at the time he is placed on deferred adjudication. *Webb v. State*, 20 S.W.3d 834, 836 (Tex.App.-Amarillo 2000, no pet.).

### Punishment Phase

■ Gavin contends that his counsel was ineffective during the punishment phase of the proceeding, by eliciting testimony from Erica, by not adequately preparing Erica and Giles to testify, by asking the trial court to continue Gavin's deferred adjudication after the trial court adjudicated his guilt, and by failing to object to Gavin's sentence as cruel and unusual punishment.

First, Gavin contends that Erica's testimony suggested that she was "an unfit mother herself," and that it "would have been better to call no one at all to testify." As we have observed, Erica testified repeatedly that Gavin was a good father and to her need for his financial, physical, and emotional support. Again, Gavin has not overcome the presumption of reasonable trial strategy. *See Goodspeed*, 187 S.W.3d at 392.

Second, Gavin contends that his trial counsel failed to adequately prepare Erica and Giles to testify. The record is silent as to how or to what extent Gavin's trial counsel prepared these witnesses to testify. Because this allegation of ineffectiveness is not firmly founded in the record, Gavin has not overcome the presumption of reasonable professional assistance. *See*

*Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999).

■ Third, Gavin argues that his trial counsel was ineffective for asking the trial court to continue Gavin's deferred adjudication after the trial court adjudicated his guilt. Gavin contends this was a procedurally hopeless request insofar as his guilt had been adjudicated at that stage; the bell could not be unrung and there could be no deferral of an adjudication that had already occurred. In this regard, Gavin relies upon two pre-*Strickland* authorities, *Ex parte Morse*, 591 S.W.2d 904, 905 (Tex.Crim.App.1980), and *Ex parte Gallegos*, 511 S.W.2d 510, 513–14 (Tex.Crim.App.1974), for the proposition that inadequate knowledge or explanation of the law may constitute ineffective assistance of counsel. That argument is unavailing when, as here, the appellate record does not disclose Gavin's counsel's reasons for making the argument, which appears to be a plea for leniency. In light of the trial court's prior order for "jail therapy," we cannot conclude that this argument was " 'so outrageous that no competent attorney would have engaged in it.' " *See Goodspeed*, 187 S.W.3d at 392. Moreover, even if counsel's argument had no basis in the law, Gavin has not established that he was harmed by the argument, as would be necessary to establish a claim for ineffective assistance. *See, e.g., Bone*, 77 S.W.3d at 833.

■ Fourth, Gavin challenges his trial counsel's failure to object to Gavin's sentence as cruel and unusual punishment. Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *Samuel v. State*, 477 S.W.2d 611, 614 (Tex.Crim.App.1972); *Jacoby v. State*, 227 S.W.3d 128, 131 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). The trial court sentenced Gavin to 20 years in prison, which is within the statutory limits.

*See* Tex. Penal Code Ann. § 12.33 (Vernon Supp.2009) (establishing statutory punishment range of two-to-twenty years' imprisonment for second-degree felony). Thus, Gavin's counsel's failure to object was not ineffective assistance of counsel.

Having considered each of Gavin's contentions and allegations of ineffective assistance of counsel, we hold that his trial counsel counsel's conduct did not so undermine the proper functioning of the adversarial process that Gavin's hearing cannot be relied on as having produced a just result. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. We overrule Gavin's first issue.

### Conclusion

We affirm the judgment of the trial court.