**Opinion issued June 17, 2014**



In The

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-13-00770-CR**

———————————

**DERRICK JAMES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1357012**

---

**MEMORANDUM OPINION**

After waiving his right to a jury trial, the trial court found Appellant guilty

of the offense of indecency with a child.[1] The trial court sentenced Appellant to 20

years in prison. In two issues, Appellant asserts he received ineffective assistance

---

[1]  *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2011).

of counsel at trial, and he complains that his sentence is excessive and grossly disproportionate, given the evidence in the case.

We affirm.

## Background

Appellant and Valerie were married and lived with Valerie's children, including Valerie's 10-year-old daughter, T.B. One day, when T.B. was lying on her bed watching television, Appellant entered her bedroom and started touching what was later established at trial to be T.B.'s genitals through her clothing. T.B. told Appellant to stop, but he told her, "No." T.B. did not tell anyone about the incident because she was afraid of what Appellant might do.

A second incident occurred when T.B. was asleep one night. Appellant came into her bedroom and began touching her genitals through her pajama bottoms. T.B. told Appellant to stop, and he told her to "be quiet." Appellant left the room but then returned and continued to touch T.B.'s genitals through her clothing. T.B. did not tell anyone about the second incident. On another date, Appellant asked T.B. to touch what she later described as his "private" area.

On August 6, 2012, when T.B.'s mother, Valerie, was not at home, Appellant was watching the children. T.B. told Appellant that she had a headache. Appellant told her to go lie on her mother's bed. T.B. lay down on her mother's bed and fell asleep. Appellant came into the room while T.B. was asleep. T.B.

2

woke up when she heard Appellant closing and locking the bedroom door behind him. Appellant came over to the bed and lay next to T.B. Appellant then began touching her genitals through her clothes.

While this was occurring, T.B.'s mother, Valerie, came home. Valerie used her key to unlock the bedroom door. When she opened the door, she saw Appellant jump up from the bed where T.B. was lying. Appellant said to Valerie, "We ain't doing anything."

Valerie told T.B. to come with her. Valerie took T.B. directly to the home of Valerie's mother. Valerie and the grandmother asked T.B. what had occurred. T.B. told them that Appellant had been "rubbing on her." Valerie asked T.B. where Appellant had rubbed her, and T.B. pointed to her vaginal area.

The grandmother called the police. A female officer was dispatched, who spoke with Valerie and T.B. The officer instructed Valerie to take T.B. to Texas Children's Hospital for an examination.

Later that day, T.B. met with a nurse, M. Jenkins, at the hospital to perform a medical exam. T.B. indicated to Jenkins that Appellant had touched her vaginal area over her clothing. Because there had been no skin to skin contact, Jenkins did not conduct a genital exam.

Two days later, Valerie took T.B. to the Children's Assessment Center. There, T.B. spoke with forensic interviewer, T. Rogers.

Appellant was charged by indictment with the offense of indecency with a child. Specifically, the indictment alleged that Appellant had "unlawfully engage[d] in sexual contact with [T.B.], a person younger than seventeen years of age and not [his] spouse . . ., by touching through clothing the genitals of [T.B.] with the intent to arouse and gratify [his] sexual desire . . . ."

Appellant waived his right to a trial by jury, and the case was tried to the bench. The State presented the following witnesses during the guilt-innocence portion of trial: T.B., Valerie, the responding police officer, the nurse who had examined T.B., and the forensic interviewer from the Children's Assessment Center, T. Rogers. After these witnesses testified, the trial court found Appellant guilty of the offense of indecency with a child.

At the beginning of the punishment hearing, Appellant stipulated that he had previously been convicted of two other offenses: (1) tampering with a witness and (2) abandoning or endangering a child. During the punishment phase, the State called several witnesses to testify. One of those witnesses was D.T.

At the time of trial, D.T. was 18 years old and had just started college. She testified that, in 2005, when she was 10 years old, Appellant had been her mother's boyfriend. During that time, he had lived with her family.

In her testimony, D.T. described an incident involving Appellant, which occurred in 2005. She stated that, early one morning, while she was still in bed,

4

Appellant came into her room and knelt by her bed. He placed his hand under the covers and began touching her body through her clothes. He ran his hand from her chest down to her vaginal area. D.T. testified that, despite telling her mother about the incident, Appellant came into her room and touched her vaginal area another four or five times before the authorities were contacted.[2]

The State also offered the testimony of N.P., Valerie's friend. N.P. and her son had lived with Appellant and Valerie in 2012. She testified that, while asleep on the couch, Appellant had touched her vaginal area through her pants. N.P. testified that this occurred on two more occasions when she awoke to find Appellant "stroking" her vaginal area though her clothes. N.P.'s testimony indicated that the police were called related to two of these incidents, but charges were never brought against Appellant.

In addition, the State presented the testimony of J.T. She and Valerie's brother have two children together.

J.T. testified that she would, on occasion, stay overnight at Valerie's and Appellant's home. She testified regarding an incident that had occurred in 2008

---

[2] Although no evidence was offered to show this, a discussion by the attorneys on the record, and statements made by defense counsel during closing argument, reflect that D.T. was the complainant with respect to the abandoning-or-endangering-a-child offense to which Appellant stipulated. The discussions indicate that Appellant was originally charged with indecency with a child but the charge was reduced to state jail felony child endangerment when Appellant pleaded guilty to the endangerment offense.

when she had spent the night at their home. It was in the morning, and Valerie had already gone to work. Appellant and the children were at home. J.T. was in bed when Appellant entered her room. Appellant told J.T. to "scoot over" in the bed. When she refused, Appellant pulled out a handgun and demanded that J.T. take off her clothes. J.T. complied. She testified that Appellant put on a condom and "forced his penis into her vagina." After he ejaculated, Appellant took J.T.'s clothes, and along with the condom, threw them in a trash can outside the home.

J.T. testified that Appellant threatened to kill Valerie, Valerie's brother, and Valerie's mother if J.T. told anyone about what he had done. J.T. stated that she remained silent but, after some time, called the police to report the incident. Her testimony indicates that charges were not filed against Appellant.

At the conclusion of the punishment hearing, the trial court sentenced Appellant to 20 years in prison. Appellant did not file a motion for new trial.

Appellant now appeals, raising two issues.

## Ineffective Assistance of Counsel

In his first issue, appellant contends that he received ineffective assistance of counsel at trial.

### A. Applicable Legal Principles

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of

reasonableness and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The first *Strickland* prong requires appellant to overcome the strong presumption that counsel's performance falls within a wide range of reasonable professional assistance. *See Andrews*, 159 S.W.3d at 101. The second *Strickland* prong requires appellant to show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See id*. at 102. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *See id*.

Appellant has the burden to establish both prongs by a preponderance of the evidence. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A failure to show either (1) deficient performance or (2) sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Carballo v. State*, 303 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

## B.    Analysis

### 1.    *Objecting to Forensic Interviewer's Testimony*

Appellant asserts that defense counsel's performance at trial was deficient because counsel did not object to an improper expert opinion regarding T.B.'s

7

truthfulness and credibility given by T. Rogers, the forensic interviewer at the Children's Assessment Center. Specifically, Appellant claims that counsel should have objected to the following italicized portion of Rogers' testimony:

> Q. Okay. Did you ask any questions during the course of that interview to test [T.B.'s] consistency with her version of events?
>
> A. Well, using the open-ended questions allowed her to narrate different incidences. She was able to describe two to three. She was able to describe specific details and what was said and what was not said, who walked in. So, she provided very specific details that didn't appear rote. She was able to narrate. It didn't appear that it was something that she had memorized.
>
> Q. The fact that she was able to narrate to you, what did that signify to you?
>
> A. Of course, as an interviewer, I don't give an opinion; *but perhaps the validity that maybe something happened.*

(Emphasis added).

Even if we presume he has satisfied the first *Strickland* prong, Appellant does not meet his burden under the second *Strickland* prong. More precisely, Appellant has not shown that there is a reasonable probability that the result of the proceeding would have been different had counsel objected to the complained-of testimony.

At trial, T.B. testified regarding the details of each incident in which Appellant had touched her genitals through her clothing. Through questioning, it was shown that T.B. knew the difference between a lie and the truth. Using a doll,

8

T.B. showed anatomically where Appellant had touched her; she identified her genital area. T.B. also demonstrated, using the doll, the manner in which Appellant had touched her.

Valerie testified that she came home to find the bedroom door locked. She stated that she used her key to unlock the door. When she opened it, she saw Appellant jump off the bed. She also saw T.B. lying on the bed. Valerie testified that Appellant then exclaimed, "We ain't doing anything." Recognizing the inappropriateness of the situation, Valerie immediately took T.B. to her mother's home. Once there, T.B. told Valerie and her grandmother that Appellant had been rubbing her vaginal area. Valerie's testimony regarding what T.B. reported to her was consistent with T.B.'s testimony at trial regarding Appellant's past actions.

The trial court also heard the testimony of the nurse from Texas Children's Hospital, M. Jenkins. She testified that T.B. told her that T.B.'s stepfather had touched her in her vaginal area over her clothes.

T.B.'s medical records from the hospital visit were also admitted into evidence. The records reflect that T.B. had reported during the examination that Appellant had touched her vaginal area through her clothes. The records indicate that T.B. stated there had been other times Appellant had touched her and that the touching had started earlier that summer.

9

In contrast, forensic interviewer Rogers did not relate the details of what T.B. had told her during the interview. Rogers testified about the techniques she uses when interviewing children and that she used these techniques when interviewing T.B. She also testified about T.B.'s demeanor during the interview. Rogers stated that T.B. was able to describe specific details to her and noted that T.B. was able to provide a narrative regarding the events. She stated that T.B.'s answers did not appear rote.

Given the evidence, we conclude Appellant has not shown that there is a reasonable probability that but for his counsel's alleged deficient performance of failing to object to Roger's testimony, the outcome of the proceeding would have been different. *See Andrews*, 159 S.W.3d at 102. Thus, Appellant has failed to satisfy the second *Strickland* prong.

### 2.    *Failure to Object to N.P.'s Punishment Testimony*

Appellant also complains that his counsel was ineffective during the punishment phase. Appellant points to testimony by N.P. in which she responded to a question on cross-examination regarding whether she returned to stay at Valerie's and Appellant's home after she had an altercation with Appellant precipitated by him touching her vaginal area over her clothing. N.P. responded that she did stay at their home again; however, she added that Valerie's mother did

not want her to return to the home "because [Valerie's mother] claimed that [Appellant] was the devil."

Appellant's counsel did not object to N.P.'s statement that Valerie's mother claimed that Appellant was "the devil." On appeal, Appellant asserts that defense counsel should have objected to this portion of N.P.'s testimony because it was "non-responsive, irrelevant, and highly prejudicial."

Presuming N.P.'s defense counsel should have objected to N.P.'s testimony, Appellant must nonetheless establish the second *Strickland* prong to meet his burden on his ineffective-assistance-of-counsel claim. As stated, to succeed on the second *Strickland* prong, an appellant must show a reasonable probability that the result of the proceeding would have been different but for counsel's ineffective assistance, i.e., a probability "sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "An appellate court will not reverse a conviction for ineffective assistance of counsel at the punishment stage unless the appellant shows prejudice as a result of deficient attorney performance." *Rivera v. State*, 123 S.W.3d 21, 32 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "To assess prejudice, 'we reweigh the evidence in aggravation against the totality of available mitigating evidence' as indicated by the record as a whole." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542 (2003)).

Appellant asserts, "Hearing that his own family members thought he was the devil was undoubtedly extremely damaging. There is more than a reasonable probability that [Appellant's] sentence could have been lower had the court not heard that portion of [N.P.'s] testimony."

Appellant correctly points out that his 20-year sentence is the maximum prison sentence he could receive for the second-degree felony offense of indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11(d) (Vernon 2011); *see also* TEX. PENAL CODE ANN. § 12.33(a) (Vernon 2011). However, the evidence heard by the trial court was more than adequate to support Appellant's 20-year-sentence.

The trial court heard from three witnesses who each testified that Appellant had also committed sexual offenses against her in the last 10 years. Two of the witnesses, N.P. and D.H., each testified that Appellant had rubbed her vaginal area through her clothing. The witnesses' description of Appellant's conduct sounded nearly identical to what T.B. described in this case. In addition, like T.B., D.H. had been only 10 years old when Appellant touched her vaginal area through her clothing.

The trial court also heard the testimony of J.T., who testified that Appellant had forced her to have sexual intercourse with him at gunpoint in 2008. D.H. and J.T. also each testified about the psychological effects of what Appellant had done to her.

Although the trial court imposed the maximum prison sentence, Appellant fails to demonstrate a reasonable probability—that is, a probability sufficient to undermine confidence in the outcome—that the trial court would have imposed a lesser sentence had his defense counsel objected to N.P.'s testimony that Valerie's mother thought Appellant was "the devil."  We conclude that Appellant has not satisfied the second *Strickland* prong in this regard.

We hold that appellant has failed to show, by a preponderance of the evidence, that he received ineffective assistance of counsel at trial.  *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068.  Accordingly, we overrule Appellant's first issue.

**Cruel and Unusual Punishment**

In his second issue, Appellant claims his sentence was excessive and grossly disproportionate to the offense underlying the conviction, resulting in cruel and unusual punishment in violation of the United States and Texas constitutions.  *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13.  To preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a); *see also Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that defendant waived any error regarding violation of

13

state constitutional right against cruel and unusual punishment because argument was presented for first time on appeal); *Gavin v. State*, 404 S.W.3d 597, 602 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding appellant's complaint that his 20-year-sentence for offense of indecency with a child constituted cruel and unusual punishment was waived because it was not asserted in the trial court); *Noland v. State*, 264 S.W.3d 144, 151–52 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding appellant's assertion that sentence was grossly disproportionate was waived because complaint not raised by objection in trial court or by motion for new trial).

Here, Appellant never objected to the alleged disproportionality of his sentence either in the trial court or in a post-trial motion. Thus, we hold that Appellant's complaint is waived on appeal. *See* TEX. R. APP. P. 33.1(a); *Gavin*, 404 S.W.3d at 602.

We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


                                           Laura Carter Higley
                                           Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).


15