

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00230-CR
No. 02-18-00231-CR
No. 02-18-00232-CR

_____

EARL THOMPSON, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 211th District Court
Denton County, Texas
Trial Court Nos. F17-1865-211, F17-1867-211, F17-1868-211

_____

Before Gabriel, Pittman, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  INTRODUCTION

Appellant Earl Thompson was indicted and pleaded guilty in three separate cases of burglary of habitation with intent to commit sexual assault.  *See* Tex. Penal Code Ann. § 30.02.  During the punishment phase, the trial judge sua sponte asked Appellant if he wanted to testify.  Appellant stated that he did, but after a ten-minute recess to confer with his counsel, Appellant's trial counsel did not call him as a witness.  The jury assessed Appellant's punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice (TDCJ), and the trial court sentenced him accordingly.  Appellant raises two issues asserting that his Sixth Amendment constitutional right to testify was violated and that the jurors improperly considered parole when deliberating.  Because the record on this direct appeal is inadequate for us to resolve whether there was deficient performance by Appellant's counsel let alone prejudice with regard to his Sixth Amendment complaint, and because a complaint to the trial court's response to the jury's note concerning parole was not preserved—and even if preserved, was not an error— we affirm.

2

## II. Background[1]

Following his commission of a series of home-invasion assaults in Denton, Texas, Appellant was arrested and charged in three cases of burglary of habitation with intent to commit sexual assault. He pleaded guilty in all three cases and elected to have a jury assess punishment for all three cases in one punishment trial. During the punishment trial, the State called 31 witnesses.

Before the defense called its first witness and outside of the presence of the jury, the trial court asked both Appellant and his trial counsel if they had discussed the possibility of Appellant testifying and his Fifth Amendment right not to testify. After Appellant and his trial counsel affirmed that they had discussed the matter, the trial court asked Appellant if he wanted to testify. Appellant stated that he wanted to testify, which prompted the trial court to reiterate again that it is his absolute right not to testify and that the exercise of the right cannot be used against him. Appellant reiterated that he wanted to testify. The entire exchange appears in the reporter's record as follows:

> THE COURT: All right. We're back on the record from the lunch break. The jury has not been seated at this time.
>
> [Appellant's trial counsel], have you had plenty of time to admonish your client and go over with him his right to exercise his Fifth Amendment and not testify in this matter?

---

[1]Because the resolution of Appellant's two issues does not require more, we provide a limited recitation of the factual and procedural background of these cases.

[APPELLANT'S TRIAL COUNSEL]: I have, Your Honor.

THE COURT: All right. Mr. Thompson, I just want to reiterate and make sure that you have had ample opportunity to speak to your attorney about your ability to be able to -- one of two things, either testify in this matter or exercise your Fifth Amendment right to not testify.

Have you had time to go over with your attorney all of the options that you have regarding your testimony?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And have you made a decision?

THE DEFENDANT: Yes, sir.

THE COURT: And what is your decision?

THE DEFENDANT: Testify.

THE COURT: You would like to testify?

THE DEFENDANT: Uh-huh.

THE COURT: All right. And that is your absolute right to do so. I just want to make sure that I reiterate that if you choose to exercise your constitutional right to remain silent, you understand that that is an absolute right and that cannot be used against you and, in fact, the jury will be instructed both orally by me reading the charge and in writing that they cannot use that circumstance against you? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And understanding that, do you still choose to testify in this matter?

THE DEFENDANT: Yes, sir.

4

After the defense called its second witness, the trial court again discussed Appellant's Fifth Amendment rights with him before granting a ten-minute recess for Appellant to discuss with his trial counsel whether he still wanted to testify:

> THE COURT: Mr. Thompson, we spoke and I gave you admonishments before the jury was seated, and I know you've had lots of opportunities to speak with [your trial counsel] about you testifying in this case. One of the things I wanted to bring up to you is you understand if you take the stand your attorney is going to ask you questions first? You understand you cannot assert a Fifth Amendment privilege and remain silent when the State begins to ask you questions? You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It's a two-way street. And I know [your trial counsel] has talked to you about that, but I want to reiterate that as well, so we've taken a break so that you can talk to your attorney a few more minutes before you're called to testify. So I've granted that recess in order for you to speak to your attorney in private to see if you want to stick with your decision of testifying or if you'd like to assert your Fifth Amendment privilege.
>
> With that, we'll be in recess for ten minutes.
>
> [APPELLANT'S TRIAL COUNSEL]: Thank you, Your Honor.

After the recess, the defense called a total of three witnesses, but not Appellant. The record does not reflect that the issue of whether Appellant wanted to testify came up again.

After both sides rested, the trial court tendered its charge to the jury for all three cases. The charge included the following instructions regarding parole:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the

5

actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time defendant may earn. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. *You are not to consider the manner in which the parole law may be applied to this particular defendant.*

In determining the punishment in this case, you are instructed that you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas.

[Emphasis added.]

After the jurors had begun deliberating, the presiding juror gave a note to the

bailiff with three questions for the trial court that all concerned parole:

1) Does a life sentence mean no chance of parole?

2) Does 99 yrs mean a minimum of 30 yrs before parole opportunity is available?

3) Does 60 yrs mean a minimum of 30 yrs before parole opportunity is available?

The trial court read the questions to counsel and proposed the following response:

"Ladies and gentlemen of the jury, in response to your question, you are instructed

that you have before you all the law and the evidence allowed in the case. Please refer

6

to the Court's Charge and continue your deliberations." After neither the prosecutor nor Appellant's trial counsel had any objection to the proposed response, the bailiff gave the written response to the jurors.

The jury assessed Appellant's punishment at life in the Institutional Division of the TDCJ for each case and the trial court sentenced Appellant accordingly. This appeal followed.

### III.  FAILURE TO TESTIFY

In his first issue, Appellant contends that his Sixth Amendment right to testify was violated because the record supports that he expressed a desire to testify, but his trial counsel did not call him as a witness. Appellant attempts to frame his challenge as implicating his Sixth Amendment defendant-autonomy rights recently explained by the United States Supreme Court in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). The State responds that although Appellant did state at one point that he wanted to testify, the last on-the-record mention of the issue demonstrates that Appellant and his trial counsel were still discussing if Appellant was going to testify, so Appellant's allegation is not confirmed by the record. Moreover, the State contends that a defendant's complaint that his constitutional right to testify was violated is not analyzed under the *McCoy* framework, but is instead analyzed under the ineffective-assistance-of-counsel standard in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and that the record on direct appeal does not support an ineffective-assistance-of-counsel claim.

Because we conclude that the record on this direct appeal is inadequate to establish that Appellant's right to testify was violated, we overrule Appellant's first issue regardless of whether *Strickland* or *McCoy* controls.

## A. The decision to testify is a constitutional right that is the defendant's alone to make, and an allegation that the right has been violated has traditionally been brought as an ineffective-assistance-of-counsel claim.

A criminal defendant has a constitutional right to testify in his defense, including during the punishment phase of the trial. *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709 (1987); *Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009); *Pady v. State*, 908 S.W.2d 65, 68 (Tex. App.—Houston [1st Dist.] 1995, no pet.). This right can be knowingly and voluntarily waived only by the defendant, not his counsel. *Smith*, 286 S.W.3d at 338 n.9.[2]

In *Johnson v. State*, the court of criminal appeals decided that it is not the trial court but "defense counsel [who] shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant." 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). Thus, *Johnson* held that "*Strickland* provides the appropriate framework for addressing an allegation that the defendant's right to testify was denied by defense counsel." *Id.* *Johnson* further

---

[2]One commentator has explained that the lawyer disciplinary rules track with these constitutional entitlements and "provide that in the criminal defense context, a lawyer must abide by the client's decisions about the plea to enter, whether to waive jury trial, and whether to testify." W. Bradley Wendel, *Autonomy Isn't Everything: Some Cautionary Notes on McCoy v. Louisiana*, 9 ST. MARY'S J. LEGAL MALPRACTICE & ETHICS 92, 98 (2018) (citing Model Rules of Prof'l Conduct r. 1.2(a) (Am. Bar Ass'n 2018)).

held that because a complete denial of the right to testify at trial is not a structural defect but is the type of violation that can be subjected to a harm/prejudice inquiry, "the usual *Strickland* prejudice analysis applies: the defendant must show a reasonable probability that the outcome of the proceeding would have been different had his attorney not precluded him from testifying." *Id.* at 239.

Therefore, since *Johnson*, Texas law has required that a defendant's complaint that his right to testify was denied by his counsel be reviewed under an ineffective-assistance-of-counsel framework, which requires a sufficient record to show both deficient performance and prejudice. *See Carballo v. State*, 303 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Johnson* in recognizing that "the Court of Criminal Appeals has held that the *Strickland* ineffective assistance of counsel test provides the appropriate framework for addressing an allegation that the defendant's right to testify was denied by his defense counsel"); *Roberts v. State*, No. 08-12-00112-CR, 2014 WL 1513122, at *3 (Tex. App.—El Paso Apr. 16, 2014, no pet.) (not designated for publication) ("When a defense attorney prevents a defendant from testifying on his own behalf, we use the *Strickland* framework to address the allegation counsel was ineffective in allowing the defendant to exercise his right to testify.").

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432

9

(Tex. Crim. App. 2007).  Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."  *Menefield*, 363 S.W.3d at 593.  If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it."  *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013).  Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance.  *See Menefield*, 363 S.W.3d at 592–93; *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999).

### B.  We need not decide whether *McCoy* or *Turner* establishes a new rule to review an alleged denial of the right to testify.

Appellant contends a new standard applies to a claimed denial of the right to testify because the court of criminal appeals disregarded the *Strickland* standard in *Turner v. State*, No. AP-76,580, 2018 WL 5932241 (Tex. Crim. App. Nov. 14, 2018), and thus overruled *Johnson*.  *Turner*, he argues, adopted a standard derived from the United States Supreme Court's holding in *McCoy*.  According to Appellant, the court of criminal appeals now views a defendant's failure to testify through the defendant-autonomy prism of *McCoy* rather than the competence-of-counsel prism of *Strickland* (and *Johnson*).[3]  We cannot agree.

---

[3]The pivotal difference if Appellant is correct is that, unlike an ineffective-assistance-of-counsel error under *Johnson* and *Strickland*, which is not considered a structural error and thus also requires a showing of harm to be reversible, a client-

10

Last year in *McCoy*, the United State Supreme Court reversed the defendant's conviction for capital murder and remanded the case when the defendant's counsel conceded the defendant's guilt against the defendant's clear objections to the contrary. 138 S. Ct. at 1512. *McCoy* held that the Sixth Amendment guarantees to a defendant "the right to insist that counsel refrain from admitting guilt, even when counsel's experience-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *Id.* at 1505. *McCoy* further stated, "When a client expressly asserts that the objective of '*his* defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id.* at 1509. *McCoy* explained that maintaining one's innocence is an objective of representation and not merely an issue of trial tactics, so it is a decision reserved for the client, not the attorney. *Id.*

In *Turner*, the court of criminal appeals addressed a capital murder case with "striking" similarities to *McCoy*. 2018 WL 5932241, at *20. The similarities were that in both capital murder cases, the defendant's trial counsel's strategy was to concede that the defendant had killed the victims and argue that because the defendant was guilty of a lesser offense, he should not get the death penalty. *Id.*; *see McCoy*, 138 S. Ct. at 1506. The record supported that the defendant objected to this strategy because he

autonomy error under *McCoy* and *Turner* would be considered structural, requiring no showing of harm and resulting in automatic reversal and remand for a new trial. *See Turner*, 2018 WL 5932241, at *21 (reversing and remanding for new trial when the appellant both preserved and established his *McCoy* claim).

maintained that he was innocent and that he did not want to concede killing the victims. *Turner*, 2018 WL 5932241, at \*20; *see McCoy*, 138 S. Ct. at 1506. Therefore, *Turner* concluded that structural error had occurred because *McCoy* controlled, the appellant had preserved his *McCoy* claim, and *McCoy* was violated because the appellant had made it known repeatedly on the record of his desire not to concede that he had killed the victims but his counsel ignored his desire. 2018 WL 5932241, at \*20. The error required reversal and remand for new trial. *Id.* at \*21.

We conclude that neither *McCoy* nor *Turner* has implicitly overruled *Johnson*, and we see no implicit conflict between *McCoy* or *Turner* and *Johnson*.[4]

## C. Analysis

But, in any event, we need not resolve a question of a conflict between *McCoy* or *Turner* and *Johnson* in order to resolve this appeal. The record in *McCoy* and *Turner* clearly established that counsel acted contrary to the client's wishes. The same is not true in this case. The record in our appeal does not tell us whether Appellant was actually deprived of his right to testify and if he was persuaded not to testify, what

---

[4]But even assuming *arguendo* that *McCoy* and *Turner* conflict with *Johnson*, they still would not necessarily control. The instant case does not involve a defendant who, during the guilt/innocence phase of a capital murder trial, wanted to maintain his innocence and clearly objected to his counsel's refusal to advance such a defense by conceding that the defendant had actually committed the charged offense. *Cf. Turner*, 2018 WL 5932241, at \*21; *McCoy*, 138 S. Ct. at 1509. Here, the supposed violation occurred during the punishment phase after Appellant had already entered a guilty plea and conceded guilt and without any on-the-record objection from Appellant. At this point, the court of criminal appeals has not applied the principles of *McCoy* to the right to testify in a noncapital case or in the procedural context of the instant case.

prompted his change of heart. If he were steadfast in his desire to testify, *McCoy* might arguably apply. If he wavered in his desire to testify because of the advice of his counsel, *Strickland* might continue to apply.

Here, unlike several other cases where an appellant waited until appeal to express his or her desire to testify, there is some indication in our record that Appellant initially wanted to testify.[5] When asked sua sponte by the trial court, Appellant stated that he wanted to testify. But there is also a follow-up discussion that reflects that Appellant and his counsel were still discussing the issue. And after that, the record is silent. The record we have to review does not establish the fact that is essential to Appellant's claim—that he wished to testify on his own behalf and was prevented from doing so, or if talked out of doing so, the nature of the advice that prompted his decision.

Numerous cases support our conclusion that a record silent on the question of whether counsel's actions frustrated a defendant's desire to testify makes it impossible to resolve Appellant's claim on direct appeal, no matter the standard we apply. *See Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005) ("[A]ppellant's assertions

---

[5]*See, e.g.*, *Grumbles v. State*, No. 05-13-00369-CR, 2014 WL 3907994, at *2 (Tex. App.—Dallas Aug. 12, 2014, no pet.) (mem. op., not designated for publication) ("Nor does the record contain . . . appellant's complaint about not being called as a witness, or a ruling from the trial court denying him his right to testify."); *Rice v. State*, No. 05-07-00704-CR, 2008 WL 3522243, at *3 (Tex. App.—Dallas Aug. 14, 2008, pet. ref'd) (not designated for publication) ("[Appellant's] outbursts in the courtroom do not constitute testimony, and he never affirmatively stated he wished to take the stand to testify.").

in his brief on appeal, in the absence of anything in the trial record, are insufficient to show that he asserted his right to testify and his attorney failed to protect it."); *Brown v. State*, No. 08-12-00026-CR, 2014 WL 172521, at *5 (Tex. App.—El Paso Jan. 15, 2014, pet. ref'd) (not designated for publication) (finding no deficient performance when "Appellant did not provide any affirmative evidence that his lawyer refused to let him testify"); *Stovall v. State*, No. 05-96-01371-CR, 1998 WL 484624, at *6 (Tex. App.—Dallas Aug. 19, 1998, pet. ref'd) (refusing to find deficient performance when the defendant did not testify after counsel initially told the jury that he would because the "ambiguity of the conclusions to be drawn from the record" about the defendant's desire to testify required the reviewing court to engage in rank speculation). Again, even if *McCoy* applied to the deprivation of the right to testify, our record does not establish a deprivation of that right.

Moreover, the record is silent as to how the advice and actions of his counsel impacted Appellant's desire or ability to testify, i.e., whether it was part of an agreed trial strategy, or a strategy pursued in disregard of Appellant's wishes. With a silent record and applying a *Strickland* standard, we can find ineffective assistance of counsel only if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The failure to call a defendant or any witness to testify during a punishment trial is not on its face so outrageous that it represents deficient performance. *See Brown*, 2014 WL 172521, at *5. Accordingly, the deficient-performance prong of Appellant's

14

ineffective-assistance-of-counsel claim cannot be sustained in this appeal's posture. *See Esparza v. State*, No. 08-12-00007-CR, 2014 WL 97301, at *7 (Tex. App.—El Paso Jan. 10, 2014, no pet.) (not designated for publication) ("The record shows that Appellant and his attorney spoke after the State rested its case, but based on the record, we do not know what advice Appellant received from his attorney about his right to testify. Moreover, there is nothing in the record demonstrating that Appellant was not allowed to testify or that he wanted to testify."); *Stuckwisch v. State*, No. 08-16-00098-CR, 2017 WL 3725811, at *6 (Tex. App.—El Paso Aug. 30, 2017, no pet.) (not designated for publication) ("[W]here the record is silent as to whether defense counsel advised a defendant to testify or not, . . . a claim of ineffectiveness under this theory has not been affirmatively demonstrated in the record and cannot be sustained.").

Assuming that the prejudice prong of *Strickland* applies, Appellant has also failed to demonstrate the prejudice prong of his ineffective-assistance-of-counsel claim because he presents no argument or citations to the record to support what he would have testified about, or that had he testified, the outcome would have been different. *See Dukes v. State*, 486 S.W.3d 170, 182 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (op. on reh'g) ("[A] claim that trial counsel deprived the defendant of his right to testify must be supported by evidence in the record that the defendant would have testified, and of what the defendant would have said."); *Calderon v. State*, No. 03-15-00442-CR, 2016 WL 3144175, at *2 (Tex. App.—Austin June 2, 2016, no

15

pet.) (mem. op., not designated for publication) (overruling the appellant's sole issue that her right to testify was violated because "there is no indication in the record that if counsel had questioned [the appellant] on the record regarding whether she was waiving her right to testify, she would have decided to exercise that right"); *see also Carballo*, 303 S.W.3d at 751 (rejecting similar ineffective-assistance claim because "it is not possible to determine whether the result of the punishment proceeding would have been different if defense counsel had questioned appellant regarding his version of the events").

Accordingly, we overrule Appellant's first issue.

### IV. CONSIDERING PAROLE IN JURY DELIBERATIONS

In his second issue, Appellant argues that the jury's questions submitted to the trial court demonstrate that the jurors improperly considered parole during their deliberations. Although Appellant concedes that the trial court's instruction was "accurate with regard to how parole eligibility is charged," he contends that the jury's questions demonstrated that they disregarded this instruction, so it was necessary for the trial court not only to refer back to the charge but also to provide additional "curative" instruction as well.

### A. Applicable Law

A jury's communications with the trial court are governed by article 36.27 of the code of criminal procedure, and we review a trial court's responses for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 36.27. Article 36.27 requires the trial

16

court to answer communications from the jury and to give additional instructions on questions of law requested by the jury when the request is proper. *Id.* If the request is not proper, the trial court should so inform the jurors by referring them to the court's charge. *Id.*; *Gamblin v. State*, 476 S.W.2d 18, 20 (Tex. Crim. App. 1972).

"Under Texas law, parole is not a proper topic for jury deliberation." *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998); *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 4. And, while the court of criminal appeals has recognized that a jury note regarding parole "suggests that jurors are 'discussing' and 'considering' parole, . . . [n]ot every mention of parole . . . warrants a drastic remedy." *Colburn*, 966 S.W.2d at 519. Therefore, to show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was (1) a misstatement of the law, (2) asserted as a fact, (3) by one professing to know the law, (4) which is relied upon by other jurors, and (5) who for that reason changed their vote to a harsher punishment. *Id.* at 519–20; *Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984).

## B. Analysis

As an initial matter, Appellant has failed to preserve this alleged error because his trial counsel did not object when the trial court read the proposed response to the jury's note in open court and submitted the written response to the jury. *See Diehl v. State*, No. 04-07-00608-CR, 2008 WL 2260833, at *2 (Tex. App.—San Antonio June 4, 2008, no pet.) (mem. op., not designated for publication) ("The record here does not demonstrate that Diehl objected to the trial court's answers to the jury questions;

17

therefore, he failed to preserve error."); *Saddler v. State*, No. 01-95-00390-CR, 1996 WL 111845, at *4 (Tex. App.—Houston [1st Dist.] Mar. 14, 1996, pet. ref'd) (not designated for publication) ("[A]n objection in the record or a bill of exception is necessary to preserve error concerning the trial court's communications with the jury during its deliberation." (citing *Harris v. State*, 736 S.W.2d 166, 166–67 (Tex. App.—Houston [14th Dist.] 1987, no pet.))). Accordingly, nothing is presented for our review. *See Diehl*, 2008 WL 2260833, at *2.

Assuming *arguendo* that the complaint was preserved, we must consider whether the trial court erred. The jury note is some evidence that at some preliminary point in their deliberations the jury may have improperly considered or discussed parole. *See Colburn*, 966 S.W.2d at 519. We agree with the parties—including Appellant—that the jury charge accurately instructed the jurors not to consider how parole law may apply to Appellant. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4. Therefore, the trial court's response that the jurors had all of the available law and evidence and to refer back to the charge in continuing their deliberations was neither additional instruction nor error. *See Fuentes v. State*, No. 02-15-00356-CR, 2016 WL 6277369, at *6–7 (Tex. App.—Fort Worth Oct. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (holding no error when trial court informed the jury that it could not respond to a question when the original charge had already correctly instructed the jurors on their question); *Reidweg v. State*, 981 S.W.2d 399, 402 (Tex. App.—San Antonio 1998, no pet.) (op. on reh'g) (explaining that a communication between the

18

trial court and jury that violates Article 36.27 but "does not constitute an additional instruction by the court upon the law or some phase of the case . . . is not reversible error").

Moreover, it is a rebuttable presumption that the jurors follow the trial court's instructions in the manner presented. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (holding the jury is presumed to follow the court's instructions as given); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). At best for Appellant, this record demonstrates that the jury had improperly considered parole at some preliminary point in deliberations. But the trial court's response referred the jury to the trial court's charge which had correctly instructed the jury not to consider parole regarding Appellant, so Appellant was required to set forth evidence to rebut the presumption that the jury followed the trial court's instructions in response to the note.

Appellant has pointed to no evidence to rebut the presumption that the jury followed the trial court's instruction by reviewing the charge and continuing their deliberations without considering how parole law may apply to Appellant. Indeed, Appellant did not file a motion for new trial alleging juror misconduct or obtain a hearing to adduce facts not in the record. *See Colburn*, 966 S.W.2d at 520.

Accordingly, we overrule Appellant's second issue.

## V.  CONCLUSION

Having overruled Appellant's two issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  March 7, 2019

20