**Opinion issued July 13, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00302-CR**

———————————

**MARCUS LOCKETT, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1736264**

---

## MEMORANDUM OPINION

A jury convicted Marcus Lockett of first-degree murder. Lockett pleaded true

to the State's punishment enhancements, and the trial court sentenced him to 40

years' confinement. On appeal, Lockett contends that the trial court erred by

(1) admitting a detective's opinion that Lockett was not truthful, and (2) denying his

motion for mistrial after the State commented on his failure to testify. Because the trial court did not abuse its discretion in admitting the evidence or a denying a mistrial, we affirm.

## Background

Latara Sanders's family were informed that she had missed work two days in a row. Concerned, Latara's mother, brother, sister, and brother-in-law drove to Latara's apartment that she shared with Lockett—Latara's longtime on-and-off boyfriend. Her family found Latara's car parked outside, but the apartment door was locked, the lights were off, the blinds were shut, and no one answered the door. Her family then visited Lockett's brother's home to ask whether he had heard from Lockett or Latara, but he had not.

That night, Latara's family returned to Latara's apartment and asked the Houston Police Department to conduct a welfare check. HPD Officer S. Flynn met the family at the apartment around midnight. After checking the door, window, and exterior of the apartment, Officer Flynn informed the family that he could not force entry into the apartment, but he would file a missing-persons report. After Officer Flynn left, Latara's brother-in-law kicked the apartment door open and entered. Latara's decomposing body was found lying face down on the living room sofa.[1]

---

[1] Latara's body was covered in bruises and scratches on her head, face, hands, and arms; had a broken nose; and had rectangular-shaped bruises on her back.

2

Officer Flynn returned to the apartment to cordon off the crime scene and begin investigating.

Early the next day, Officer Flynn and Sergeant J. Horn tried to find Lockett at his mother's home. Lockett's mother informed them that he was not there but provided no other information. Detectives D. Stark and J. Young searched for Lockett at his father's home and contacted his mother again. Lockett's mother told them that when she spoke to Lockett, he admitted that he and Latara had gotten into an argument that went too far. A few days later, Lockett, accompanied by his mother and grandmother, voluntarily went to the police station.

In a recorded interview with Detective Stark, Lockett admitted he was with Latara and that they had argued, but he claimed the argument was not physical and that he left the apartment the next morning and had not returned. After the interview, Lockett was arrested for Latara's murder. Lockett was charged with first-degree murder, and the State alleged two punishment-enhancement allegations. Lockett pleaded not guilty to murder, not true to the punishment-enhancement allegations, and went to trial.

The jury heard testimony from Officer Flynn; Sergeant Horn; Detective E. Aguilera; Detective Stark; L. McCracken, a forensic chemist; J. Ross, a forensic pathologist; Lockett's mother; Latara's sister; and Latara's brother-in-law. The jury convicted Lockett of first-degree murder. At the punishment phase, Lockett pleaded

true to the enhancement paragraphs. The trial court heard testimony from Latara's sister and closing arguments before sentencing Lockett to 40 years' confinement.

## Admission of Evidence

Lockett contends in his first five issues that the trial court erred in admitting portions of Lockett's recorded interview with Detective Stark because they included Detective Stark's opinion on Lockett's veracity or credibility. The State responds that the statements were admissible as investigative tactics.

### A. Standard of Review

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when it's ruling is so clearly wrong that it falls outside the zone of reasonable disagreement. *Id.* The trial court's ruling must be upheld if it is reasonably supported by the evidence and is correct on any theory of applicable law. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

### B. Analysis

During his interrogation of Lockett, Detective Stark stated:

- "Like I said earlier when I said I was a truth-seeker, I need to find out the truth about what happened. Okay? That's not what's happening right now. You're not telling me the whole truth. I mean, I need you to be honest with me. Okay? This is the only way we can work through this, is if you're honest";

- "Is there something you left out, [Lockett]? I know you want to tell me the truth. That's why you're here";

4

- "I need you to tell me what happened. It's the only way I can help you out, but right now you're not telling me the truth. You're not helping me out. You're not helping your mom out. You're not helping—what is that, your grandma? You're not helping your grandma out. Their hearts are breaking";

- "We all need to hear the truth, [Lockett]"; and

- "You gave me little pieces but not the whole truth."

At trial, Lockett objected to the admission of these portions of his videorecorded statement, claiming Detective Stark provided improper opinion testimony about Lockett's truthfulness.

The determination of a witness's truthfulness lies solely with the jury. *See Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993). Here, Lockett did not testify, so he was not a witness. But the complained-of statements were not testimony from Detective Stark; they were from the videorecorded interview of Lockett at the police station. *Wood v. State*, No. 01-13-00845-CR, 2014 WL 5780273, at *5 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that police officer's statements on defendant's truthfulness during interrogation were investigative tactics not improper opinion testimony). Lockett has not cited a case in which a police officer's investigative tactics during an interrogation were considered improper opinion testimony at trial and we have found none. *See id.*

5

Instead, Lockett cites *Ex parte Crews*, No. WR-76,141-01, 2014 WL 969964, at *4 (Tex. Crim. App. Mar. 12, 2014) (not designated for publication). But it is distinguishable. In *Crews*, the Texas Court of Criminal Appeals considered whether the defendant's counsel was ineffective for failing to keep the defendant's videorecorded statement to police out of evidence. *Id.* at *3–4. In the video, the investigator and the defendant discussed that the defendant had committed the "basically the same [offense]" before, and the investigator gave several opinions about the defendant's veracity. *Id.* at *2. The Court considered counsel's failure to object to the video's repeated mentions of prior bad acts, counsel's statement that he should have objected, and a motion in limine objecting to prior bad acts. *Id.* at *3–4. But the Court did not address the admissibility of the investigator's opinion about the defendant's truthfulness.

Lockett then points out that a witness may not give an opinion on the truthfulness of other testimony, *Taylor v. State*, 774 S.W.2d 31, 34 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd), and that it is improper for an attorney to question a witness about the truthfulness of another's testimony. *Joseph v. State*, 367 S.W.3d 741, 744–45 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We do not disagree with *Taylor* or *Joseph*, but unlike in those cases, Detective Stark's trial testimony did not include a comment on Lockett's truthfulness nor did any attorney

question a witness about the truthfulness of another witness. *See Taylor*, 774 S.W.2d at 34; *Joseph*, 367 S.W.3d at 744–45.

We thus hold that the trial court did not abuse its discretion by overruling Lockett's improper opinion objections.

## Mistrial

Lockett argues that the trial court should have granted a mistrial because the State commented on Lockett's failure to testify. The State admits that it improperly commented but disagrees that the comment warrants a mistrial.

### A. Standard of Review

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011) (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)); *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the trial court at the time of its ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.* Only in the extreme circumstances where the prejudice is incurable is a mistrial required. *Hawkins*, 135

S.W.3d at 77; *Ocon*, 284 S.W.3d at 884–85 (mistrial should be granted when less drastic alternatives fail to cure prejudice).

## B.     Analysis

The State made the complained-of statement in closing argument:

[State]: You're never going to know what happened just before the defendant killed Latara Sanders, 100 percent. The only person who is still alive who can tell us that is the defendant, so I want you to go–

[Defense Counsel]: Objection, Your Honor.

[Trial Court]: Sustained.

[Defense Counsel]: Ask for the jury to be instructed to disregard the prosecutor's last comment.

[Trial Court]: Jury will disregard.

[Defense Counsel]: And I ask for a mistrial, as the law requires me to do.

[Trial Court]: That's denied.

The State's comment on a defendant's failure to testify violates the United States and Texas Constitutions, and statutory law. *See* U.S. CONST. amend. V (guaranteeing a criminal defendant the right to remain silent); TEX. CONST. art. I, § 10 (same); TEX. CODE CRIM. PROC. art. 38.08 ("[T]he failure of any defendant to . . . testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."); *see also Griffin v. California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment, in its direct application to the

Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused silence or instructions by the court that such silence is evidence of guilt."); *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) (defendant has right not to testify at trial, so commenting on defendant's decision is improper). The parties do not disagree that the State's comment was improper, so we only review whether the improper comment required a mistrial.

A mistrial is appropriate when the objectionable events are so emotionally inflammatory that curative instructions are unlikely to prevent the jury from being unfairly prejudiced against the defendant. *See Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); *see also Ocon*, 284 S.W.3d at 884 ("Whether an error requires a mistrial must be determined by the particular facts of the case."). When determining whether the trial court abused its discretion in denying a mistrial, we balance the three *Mosley* factors: (1) the prejudicial effect, (2) the curative measures taken, and (3) the strength of the evidence supporting the conviction. *See Archie*, 340 S.W.3d at 739 (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)) (extending the *Mosley* factors to evaluating an improper jury argument that violated a defendant's constitutional rights).

The first *Mosley* factor looks at the magnitude of the prejudicial effect of the State's comment in closing argument. *See Hawkins*, 135 S.W.3d at 77 (prejudice is

9

the touchstone of the first factor). The prejudicial effect of the State's comment was low. The State's remark was brief and isolated, and the State never repeated or emphasized the statement. *See Carballo v. State*, 303 S.W.3d 742, 747–48 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (prejudicial effect of State's comment on defendant's failure to testify was lessened by fact that statement was inadvertent, brief, and not repeated).

Second, we consider the curative measures taken. The trial court immediately instructed the jury to disregard the State's comment. We presume the jury follows the trial court's instructions. *Gonzalez v. State*, 522 S.W.3d 48, 64 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)). The presumption is refutable, but Lockett must point to evidence that the jury did not follow the trial court's instructions. *Thrift*, 176 S.W.3d at 224. Except in the most blatant cases, harm from the State's comment on the defendant's failure to testify is cured by the trial court's instruction to disregard. *See Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999) (acknowledging that the "presumption that an instruction [to disregard] generally will not cure comment on failure of the accused to testify . . . has been eroded to the point that it applies only to the most blatant examples[,]" and that "[o]therwise, the Court has tended to find the instruction to have force.") (quoting *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)). Lockett has not pointed to anything showing that the jury failed

to follow the trial court's instruction, other than to highlight that the comment itself was improper. So this factor weighs against finding an abuse of discretion.

Finally, we consider the strength of the evidence supporting the conviction. Lockett argues that the State's evidence was circumstantial. But circumstantial evidence is as probative as direct evidence, and a rational factfinder could deduce that Lockett committed the charged offense. *See, e.g.*, *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'") (quoting *Hooper v. State*, 214 S.W3d 9, 13 (Tex. Crim. App. 2007)). Here, there was no evidence of forced entry at the apartment where Latara was found, and nothing was stolen from the apartment. The evidence showed Latara did not fight back despite suffering multiple bruises and wounds on her body. Male DNA was collected from Latara's right eye, the back of her neck, her left bicep, her underwear, her left knuckles, and her left fingertips. For most of the samples collected, there was not enough male DNA to analyze. But the sample obtained from Latara's left fingertips matched Lockett's DNA profile.

Dr. Ross testified that Latara's official cause of death was "homicidal violence," meaning foul play was involved but there was not an obvious cause of death. Dr. Ross explained that none of the bruises or scratches resulted in her death.

11

So they considered the entire scene and information provided, which pointed to suffocation as the cause of death. An overdose was also ruled out because although there was a small amount of codeine in Latara's system, it was not enough to kill a person.

The jury heard from Lockett's mother that Lockett and Latara had gotten into an argument that went too far around the time of her death. And the jury heard the interview Lockett gave where he admitted arguing with Latara but denied killing her. Considering the strength of the evidence presented, the jury could have weighed the testimony and chosen to not believe Lockett. *See Archie*, 340 S.W.3d at 742; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury has the responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences).

While the State's comment during closing was improper, it was brief and isolated. The trial court took immediate action, and Lockett failed to show that the jury did not follow the trial court's instruction. Lastly, the evidence presented to the jury was compelling. Considering these factors together, the trial court did not abuse its discretion by denying Lockett's motion for mistrial. *See Archie*, 340 S.W.3d at 740–42. Accordingly, we overrule Lockett's final issue.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).